**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X          **Case No.: 22-cv-10383**
SOPHIA PAK,

                                        Plaintiff,          **COMPLAINT**

                     -against-

CIPRIANI USA, INC.,                                **PLAINTIFF DEMANDS**
                                                   **A TRIAL BY JURY**


                                        Defendant.

--------------------------------------------------------X

   Plaintiff SOPHIA PAK ("Plaintiff"), by and through her attorneys, PHILLIPS &

ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendant, CIPRIANI USA,

INC, ("Defendant"), as follows:


### NATURE OF THE CASE

   Plaintiff was twenty years old when she was hired by Defendant CIPRIANI USA, INC

("Cipriani") on September 14, 2021, to work on a project opening a new exclusive restaurant,

Harry's Table, for Cipriani. Almost immediately after hire, Plaintiff began to be sexually harassed

in the workplace by a consultant with supervisory authority who made many inappropriate and

unlawful comments orally and via text.  For example:

- "I really like that dress. It's nice and professional at the top but also nice and tight
  everywhere else on your body."

- "I saw that you were wearing a sweater dress. It's hot."

- "I don't wear underwear."

- "I'm surprised you are okay with jumping…because girls with big boobs usually don't
  jump."

After complaining of the sexual harassment to executives, managers, and human resources, Plaintiff was retaliated against. Her direct manager and her co-workers at Harry's Table immediately ostracized her, treated her with hostility, and made disparaging comments. Plaintiff then complained of the retaliation to human resources and her managers. Cipriani decided to address the harassment and retaliation by transferring Plaintiff out of Harry's Table to a "new" position in the corporate office. Plaintiff's new position was called "Executive Assistant" to the Director of Cipriani, and she was told it would provide her better opportunities to learn and advance at the company. Plaintiff quickly found out that it was actually a made-up job and she had little to do, nevertheless, she put her best effort forward. Plaintiff was recognized as an excellent and reliable employee in her new role.  However, Plaintiff was terminated on December 16, 2021, less than 6 weeks after her first complaint of discrimination. Plaintiff was told it was a financial position and her position was being eliminated: the very position that had just been created for her to remove her from the sexual harassment she had reported. Plaintiff's termination was actually because she had complained of sexual harassment and retaliation.

Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, New York State Executive Law §§ 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-107 *et seq.* ("NYCHRL"), and seeks damages to redress the injuries she has suffered as a result of being subjected to **sex** discrimination in the form of sexual harassment, and retaliation, including retaliatory discharge, for complaining of sexual harassment and retaliatory treatment in the workplace.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

1.      Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

2.      The Court has supplemental jurisdiction over the claims that Plaintiff has brought under State and City law pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as one or more Defendants reside within the Southern District of New York, or the acts complained of occurred therein.

4.      By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 9, 2022; (b) receiving a Notice of Right to Sue from the EEOC on September 13, 2022; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing a copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action.  A copy of the Notice of Right to Sue is annexed hereto as Exhibit A; a copy of the transmittal letter to the NYCCHR, *et ano.*, is annexed hereto as Exhibit B.

## PARTIES

5.      At all relevant times, Plaintiff was and is a resident of New York County, the State of New York.

6.      Plaintiff is a 20-year-old female.

7.      Defendant Cipriani USA, Inc. ("Cipriani") is a Delaware Corporation, having a corporate office at 110 East 42nd Street, New York, New York, through which it operates numerous luxury restaurants, bars, private clubs, and lodging facilities throughout New York City.

8.      One such facility owned by Defendant Cipriani is Harry's Table by Cipriani ("Harry's Table"), located at 235 Freedom Plaza South, New York, New York. Cipriani is in the process of opening Harry's Table for business with a target date in or around March of 2022.

9.      At all relevant times, Plaintiff was an employee of Defendant Cipriani.

10.     At all relevant times, Defendant Cipriani employed more than 15 employees.

## MATERIAL FACTS

11.     Plaintiff received an "offer letter" from Defendant Cipriani, dated September 29, 2021, indicating her employment began two weeks prior, on September 14, 2021.

12.     The offer letter stated that Plaintiff was hired as a Restaurant Manager at Harry's Table, earning a salary of $72,800.00.

13.     Despite the language in the offer letter, Plaintiff was told she would start as an Executive Administrative Assistant at Harry's Table. Her role would be as a member of Harry's Table creative team, which was responsible for the plans and preparations for opening the restaurant for business in or around March of 2022.

14.     However, oral representations were made to Plaintiff by the top executives at Harry's Table, specifically Nello Balan ("Balan") and Philip David ("David"), that she was being groomed for the role as Restaurant Manager to be assumed once Harry's Table opened.

15.     Balan also texted Plaintiff on or around October 11, 2021, approximately three weeks after her start date, that he planned on raising her salary "next month."

16.     Balan was the senior executive responsible for the completion of, and thereafter, the running of Harry's Table. Balan had the authority to hire, fire, and affect the terms and conditions of Plaintiff's employment or to or to otherwise influence the decisionmaker of the same.

17.   David, the Operations Director at Harry's Table, was also responsible for the completion and oversight of Harry's Table. David had the authority to hire, fire, and affect the terms and conditions of Plaintiff's employment or to or to otherwise influence the decisionmaker of the same.

18.   As part of the team at Harry's Table, Plaintiff's responsibilities were broad and multifaceted. They included tasks such as managing the schedules of executives and managers, purchasing supplies, taking minutes at meetings, handling communications with vendors, and office organization.

19.   Throughout Plaintiff's employment, she was told by managers and executives that she was a great employee and was performing her job very well.

20.   Immediately after being hired, Plaintiff began working with John Goulette ("Goulette").

21.   Goulette was a consultant at Harry's Table, playing a significant role in preparing it for business. Goulette was personally and professionally close to Balan. Balan had openly expressed that Goulette would become the General Manager at Harry's Table when it opened.

22.   As such, Goulette had the power to influence the decisionmakers in regard to Plaintiff's employment, including the decision to hire, fire, and affect the terms and conditions of her employment.

23.   Beginning the week of September 13, 2021, when Plaintiff first began working at the Harry's Table location, Goulette began to sexually harass Plaintiff, through oral statements, texts messages, and sexually inappropriate conduct.

24.   For instance, Goulette texted or stated, in sum and substance, the following to Plaintiff between September 16, 2021 to November 9, 2021:

a.   "I hate fucking white girls.  They're so boring! They just lie there and take it while I do all the work."

b.   "Ask me which race is best at sex. Guess which one I'll say…South American. I bet you thought I'd say Asian, right?"

c.   "I saw that you were wearing a sweater dress. It's hot. I hope that's okay for me to say."

d.   "I don't wear underwear."

e.   "I'm surprised you are okay with jumping…because girls with big boobs usually don't jump."

f.   "It was really hot when you were bent over backwards when you were trying to take that photo. Not to be inappropriate, it's just that it's impressive how you could bend that far back while standing. It's hot!"

g.   "I'd hit that though. Would you?" (Referring to another employee).

h.   "I enjoy all the actions before penetration."

i.   "I really like that dress. It's nice and professional at the top but also nice and tight everywhere else on your body. It's nice. I hope it's okay that I'm saying that."

j.   "Yeah well, I never really wear underwear anyways. Really. I never wear underwear, I just don't."

25.   Goulette would frequently and blatantly rub his crotch in Plaintiff's presence, in a sexualized manner.

26.   Goulette would suggest joining Plaintiff and her friends to "hang-out" after hours. Upon information and belief, Goulette suggested this to other young female employees as well.

27.    The incidents described *supra* are representative of the sexual harassment Plaintiff endured during her employment, but do not reflect each and every discriminatory incident that occurred.

28.    Plaintiff was extremely upsent, uncomfortable, and intimidated by Goulette's illegal conduct. Yet, she feared the repercussions she might experience if she took action against him because of Balan's close relationship with Goulette.

29.    On or around November 5, 2021, and unable to continue to endure the sexual harassment, Plaintiff hesitantly spoke with Lucy Balan ("Lucy"). Lucy was Balan's sister, and also worked as a consultant at Harry's Table. Upon hearing of the serious illegal conduct, Lucy encouraged Plaintiff to report it to Balan.

30.    On or about the same day, Plaintiff reported the sexual harassment to Balan.

31.    Balan, in a very serious tone of voice, told Plaintiff in sum and substance that she must "let me handle it myself," and saying he would have a discussion with Goulette and with Plaintiff.

32.    That same day, still upset, and now concerned about her interaction with Balan, Plaintiff approached David to complain of Goulette's conduct and Balan's concerning response.

33.    David urged Plaintiff to speak to Michael Desiderio ("Desiderio") and Nicole Riggio ("Riggio") immediately.

34.    Desiderio was the Director of Cipriani, who worked in the 42nd Street main corporate office. Desiderio had the authority to hire, fire, and affect the terms and conditions of Plaintiff's employment or to or to otherwise influence the decisionmaker of the same.

35.    Riggio was the Executive Director of Human Resources, who worked at the 55 Wall Street corporate office.  Riggio had the authority to hire, fire, and affect the terms and conditions of Plaintiff's employment or to or to otherwise influence the decisionmaker of the same.

36.     Plaintiff first spoke with Desiderio to complain about the sexual harassment. Desiderio told Plaintiff it would be best if Human Resources handled her complaint, and he contacted Riggio.

37.     On or about November 10, 2021, Plaintiff complained of the sexual harassment to Riggio, providing her with the details of Goulette's conduct, statements, and texts.

38.     Riggio informed Plaintiff that she was launching an investigation immediately. Two days later, on or around November 12, 2021, Riggio reported to Plaintiff that Goulette had been terminated.

39.     Also in response to her complaint, Plaintiff was to be removed from the Harry's Table team and transferred to work at Cipriani's 42nd Street corporate office.

40.     Riggio told Plaintiff that her new role would be supporting Desiderio, the Director of Cipriani. Riggio told Plaintiff that this was a wonderful opportunity for her and that Desiderio would mentor her for future growth and better opportunities in the company.

41.     On or about November 8, 2021, and for several days thereafter, Plaintiff began finishing her work onsite at Harry's Table and collecting her belongings that were there. While at the site, Plaintiff felt shunned. None of her prior teammates, who she had previously been very friendly with her, interacted with her, speaking to her only when absolutely necessary, and then with brevity.

42.     Plaintiff was also informed by David that negative comments were being made about her. She was told that one manager said about her, "Not all 20-year-olds are innocent, you know."

43.     Plaintiff was also told that Lucy openly expressed bad feelings and judgment against her because she took her complaints of discrimination to Human Resources instead of allowing Balan, her brother, to handle it.

44.  Balan was openly cold to Plaintiff, refusing to speak with her or make eye contact. In a group meeting, Balan shook hands with all present except for Plaintiff.

45.  David also relayed to Plaintiff that Goulette was seen (and there was video footage of) working in the lobby area of Harry's Table with Balan, Lucy, and another Harry's Table operations manager.

46.  Plaintiff now feared that Goulette had not actually been terminated, or if he was, he continued to work for Balan in any event.

47.  Once Plaintiff reported for her "new position" at the 42nd Street corporate office, she complained to Riggio of the retaliatory treatment she experienced by Balan and the Harry's Table team.

48.  Riggio stated in sum and substance, "That's retaliation. I will be launching an investigation into that." She was also notified about Goulette still working at the Harry's Table location.

49.  Plaintiff was not updated about the investigation or any determination that was made regarding the retaliation. However, as part of her responsibilities, she continued to administratively support the Harry's Table team.

50.  Soon after, though, she was instructed by Desiderio to avoid the Harry's Table staff and that she should not attend the weekly HR meeting because they would be in attendance.

51.  Despite her ongoing concerns and discomfort about how Cipriani was handling her complaints of discrimination and retaliation, she set out to perform her new role to the best of her ability. She focused on the representation from Riggio that she was being provided an outstanding new role for her career development.

52.  However, instead of a great new opportunity, she found herself isolated, with very little to do, and with substantially reduced responsibilities.

53.    The "new position" had not previously existed. It was a makeshift role, designed solely to remove her from the harassment and retaliation at Harry's Table, in lieu of of Cipriani taking effective action to correct the illegal conduct.

54.    As a hard and diligent worker, Plaintiff sought additional duties and responsibilities from the executives and managers there, offering to assist other managers in the corporate office with their workload.

55.    On December 16, 2021—just under 6 weeks after making her complaints of sexual harassment, and later retaliatory treatment—an HR representative called Plaintiff in for a meeting.

56.    At that meeting, Plaintiff was terminated.

57.    The HR representative stated she was being terminated because her "position" was being eliminated due to budget cuts and her "position" was no longer in the new budget.

58.    Upon prodding by Plaintiff, the HR representative stated repeatedly that it was nothing personal and not at all due to any performance deficiencies. She also stated that her termination was related to Plaintiff's recent complaints of discrimination and retaliation.

59.    Plaintiff left the meeting shocked and devastated to be suddenly terminated and now unemployed. Plaintiff felt an extreme level of hopelessness and despair and reached out for professional assistance for it.

60.    Defendant's conduct was in violation of federal, state, and local anti-discrimination law.

61.    Defendant's conduct was intentional and intended to harm Plaintiff.

62.    Defendant's conduct caused Plaintiff to suffer severe emotional distress from being egregiously sexually harassed, being retaliated against after she complained, and being unfairly and illegally terminated.

63.  Defendant's conduct has caused Plaintiff to suffer anxiety, depression, and feeling fearful for her own safety.

64.  Defendant's conduct has caused Plaintiff to experience nightmares, feelings of humiliation, belittlement, and degradation.

65.  Defendant's conduct has caused Plaintiff inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

66.  Defendant's conduct has caused and will continue to cause Plaintiff to suffer the loss of income, benefits, and other compensation which such employment entails.

67.  As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdiction limits of the Court.

68.  Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

69.  As such, Plaintiff demands punitive damages against Defendant.

## FIRST CAUSE OF ACTION
## SEX DISCRIMINATION UNDER TITLE VII

70.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

71.  42 U.S.C. §§ 2000e-2 states:

> It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…

72.  Defendant engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff by subjecting her to egregious sexual harassment.

## SECOND CAUSE OF ACTION
## RETALIATION UNDER TITLE VII

73.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of
      this Complaint.

74.   42 U.S.C. §§ 2000e-3(a) states that it shall be an unlawful employment practice for an
      employer:

> (1) to . . . discriminate against any of his employees . . . because
> [s]he has opposed any practice made an unlawful employment
> practice by this subchapter, …

75.   Defendant engaged in an unlawful employment practice prohibited by Title VII by
      discriminating against Plaintiff, and terminating her, because of her opposition to and
      rejection of the unlawful employment practices of Defendant.

## THIRD CAUSE OF ACTION
## SEX DISCRIMINATION UNDER THE NYSHRL

76.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of
      this Complaint.

77.   Executive Law § 296 provides that: "It shall be an unlawful discriminatory practice: (a)
      For an employer or licensing agency, because of an individual's age, race, creed, color,
      national origin, sexual orientation, gender identity or expression, military status, sex,
      disability, predisposing genetic characteristics, marital status, or domestic violence victim
      status, to refuse to hire or employ or to bar or to discharge from employment such
      individual or to discriminate against such individual in compensation or in terms,
      conditions or privileges of employment."

78.   Defendant engaged in an unlawful discriminatory practice prohibited by NYSHRL by
      discriminating against Plaintiff by subjecting her to egregious sexual harassment.

**FOURTH CAUSE OF ACTION**
**RETALIATION UNDER THE NYSHRL**

79.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this Complaint.

80.    The New York State Executive Law § 296(1) (e) and (h) forbid retaliation for engaging in

protected activity.

81.    Defendant engaged in an unlawful discriminatory practice prohibited by NYSHRL by

discriminating against Plaintiff, and terminating her, because of her opposition to and

rejection of the unlawful employment practices of Defendant.

**FIFTH CAUSE OF ACTION**
**SEX DISCRIMINATION UNDER THE NYCHRL**

82.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this Complaint.

83.    The New York City Administrative Code §8-107(1) provides that: "[i]t shall be an unlawful

discriminatory practice: (a) For an employer or an employee or agent thereof, because of

the actual or perceived age, race, creed, color, national origin, gender, disability, marital

status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or

employ or to bar or to discharge from employment such person or to discriminate against

such person in compensation or in terms, conditions or privileges of employment."

84.    Defendant engaged in an unlawful discriminatory practice in violation of the NYCHRL by

discriminating against Plaintiff by subjecting her to egregious sexual harassment.

**SIXTH CAUSE OF ACTION**
**RETALIATION UNDER THE NYCHRL**

13

85.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

86.    The Administrative Code of City of NY § 8-107 (6) forbids retaliation for engaging in protected activity.

87.    Defendant engaged in an unlawful discriminatory practice in violation of the NYCHRL by discriminating against Plaintiff, and terminating her, because of Plaintiff's opposition to the unlawful employment practices of Defendant.

## JURY DEMAND

88.    Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A.    Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII, the NYSHRL, and the NYCHRL, including sexual harassment and retaliation for engaging in protected activity;

B.    Awarding damages to Plaintiff for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendant's unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D.    Awarding Plaintiff punitive damages;

E.    Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action, and pre-judgment and post-judgment interest; and

F.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and

        proper to remedy Defendant's unlawful employment practices.


Dated:  New York, New York
        December 8, 2022

                                                    **PHILLIPS & ASSOCIATES,**
                                                    **ATTORNEYS AT LAW, PLLC**

                                        By:

                                                    Michelle A. Caiola, Esq.
                                                    Jonathan Goldhirsch, Esq.
                                                    *Attorneys for Plaintiff*
                                                    45 Broadway, Suite 430
                                                    New York, New York 10006
                                                    T: (212) 248-7431
                                                    F: (212) 901-2107
                                                    mcaiola@tpglaws.com
                                                    jgoldhirsch@tpglaws.com

15